UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD LEE CURTIS,

                            Plaintiff,

                                                        9:12-CV-1140
v.                                                       (NAM/TWD)

BRIAN FISCHER, LT. GARDNER,
DONALD HAUG, CATHERINE JACOBSEN,
D. VENETTOZZI, J. SMITH,

                            Defendants.
_____

APPEARANCES:                                OF COUNSEL:

DONALD LEE CURTIS, 86-A-3111
Plaintiff pro se
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN              RICHARD LOMBARDO, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

        This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  In

his original complaint, Plaintiff Donald Lee Curtis, an inmate of the New York Department of

Corrections and Community Supervision ("DOCCS"), alleged that Defendants violated his

constitutional rights by holding a combined disciplinary hearing on two separate misbehavior reports without informing him, forcing him to choose between the kosher meal required by his religion and the meal required by his medical needs, censoring his reading materials, confining him to the Special Housing Unit ("SHU"), and retaliating against him for filing grievances. (Dkt. No. 1-1.) The matter is currently before the Court for screening of Plaintiff's amended complaint. (Dkt. No. 30.) For the reasons that follow, I recommend that the Court sua sponte dismiss certain claims without leave to amend, sua sponte dismiss other claims with leave to amend, and direct Defendants to answer Plaintiff's due process claim regarding the combined disciplinary hearing.

## I.      ALLEGATIONS OF THE ORIGINAL COMPLAINT

Unless otherwise specified, the facts in this section appear on the face of the original complaint.

### A.      Combined Disciplinary Hearing

On January 30, 2011, Plaintiff was involved in a physical altercation with another inmate. (Dkt. No. 1-1 ¶ 14.) Non-defendant Correction Officer O'Brien issued a misbehavior report charging Plaintiff with violating a direct order, violent conduct, and fighting. (Dkt. No. 1-1 ¶ 14; Dkt. No. 1-2 at 1.) As Plaintiff was being escorted to the medical unit following his altercation with the other inmate, he allegedly threatened non-defendant Correction Officer Malloy. (Dkt. No. 1-1 ¶ 15; Dkt. No. 1-2 at 2.) Officer Malloy issued a misbehavior report charging Plaintiff with verbal harassment and threats. *Id*.

On January 31, 2011, non-defendant Correction Officer North served Plaintiff with the two misbehavior reports. (Dkt. No. 1-1 ¶ 16.) Unbeknownst to Plaintiff, Defendant

Superintendent Joseph Smith had personally reviewed the reports before they were served on

Plaintiff and had ordered that the reports be combined into one disciplinary hearing. *Id.* ¶ 17.

Officer North did not inform Plaintiff that the reports would be examined at one combined

hearing. *Id.* ¶ 18.

On February 2, 2011, Officer North came to Plaintiff's cell and informed him that it was

time for the disciplinary hearing regarding the report written by Officer Malloy. (Dkt. No. 1-1 ¶

19.) Plaintiff did not want to attend the hearing regarding that report because of previous

incidents with Officer Malloy. *Id.* ¶ 20. Officer North did not inform Plaintiff that the hearing

would also involve the misbehavior report issued by Officer O'Brien. *Id.* Plaintiff did want to

attend the hearing on the misbehavior report issued by Officer O'Brien. *Id.* ¶¶ 24-25.

At the hearing, Defendant Lieutenant Gerald Gardner, the hearing officer, "never

mentioned on tape that Plaintiff had been informed verbally or in writing that the reports had

been combined into one hearing." (Dkt. No. 1-1 ¶ 28.) Defendant Gardner found Plaintiff guilty

of all five charges in the two misbehavior reports and sentenced him to twelve months in the

SHU, twelve months' loss of good time credits, and twelve months' loss of package,

commissary, phone, and event privileges. (Dkt. No. 1-2 at 3.)

On February 3, 2011, Officer North delivered the disposition documents from the hearing

to Plaintiff. (Dkt. No. 1-1 ¶ 21.) This was the first time that Plaintiff became aware that the

misbehavior reports issued by Officers Malloy and O'Brien had been combined into one

disciplinary hearing. *Id.* ¶ 22.

A few days after the hearing, Defendant Smith came to Plaintiff's cell and informed him

that he had issued the order to combine the two misbehavior reports into one hearing. (Dkt. No.

1-1 ¶ 26.)

Plaintiff appealed his disciplinary conviction, asserting that he had been denied his right
to proper notice and an opportunity to be heard.  (Dkt. No. 1-1 ¶ 27.)  On March 28, 2011,
Defendant Dominick[1] Venettozzi, the Acting Director of Special Housing and Inmate
Disciplinary Programs, affirmed the disciplinary conviction but reduced the penalty from twelve
months to nine months.  (Dkt. No. 1-1 ¶ 27; Dkt. No. 1-2 at 16; Dkt. No. 20-1 at 1 n.2.[2])

### B.    Claims Regarding Meals

Plaintiff is a Falasha Jew and, as such, eats only kosher foods.  (Dkt. No. 1-1 ¶ 32.)  In
April 2011, a nurse practitioner prescribed a low sodium, high fiber diet for Plaintiff.  *Id*. ¶ 33.
On April 19, 2011, Plaintiff wrote to non-defendant Nurse Practitioner Parmer to inform him
that, because of his faith, his low sodium diet needed to be kosher.  (Dkt. No. 1-2 at 17-18.)  He
asked for a diet prescription "removing all kosher cold cuts from my tray such as salami, bologna
and turkey and substitut[ing] these meats with kosher cheese, sardines, eggs and peanut butter
[and] jelly and wheat bread instead of white bread."  *Id.* at 18.

Nurse Parmer responded on April 21, 2011.  (Dkt. No. 1-2 at 21.)  He stated that he had
spoken with Defendant Donald Haug, the Food Service Administrator for Upstate Correctional
Facility.  *Id*.  According to Nurse Parmer, Defendant "Haug stated that you may choose <u>either</u>
kosher diet <u>or</u> low cholesterol diet.  There are <u>no</u> modifications of these diets."  *Id.*  (emphasis in

---

[1]      Plaintiff listed this Defendant as "Donald" Venettozzi in the original complaint,
but now states that his true name is Dominick Venettozzi.  (Dkt. No. 30 at 4 n.1.)

[2]      References to page numbers in citations to Defendants' memoranda of law refer to
the page numbers in the original documents rather than to the page numbers assigned by the
Court's electronic filing system.

original).

Plaintiff wrote to Defendant Haug on April 24, 2011, to explain that his religious and medical needs could be accommodated "simply by substituting all the high sodium products on my kosher tray with other kosher items already on the kosher menu." (Dkt. No. 1-2 at 23.) Defendant Haug did not respond. (Dkt. No. 1-1 ¶ 36.)

On April 27, 2011, Plaintiff filed a grievance regarding the diet issue. (Dkt. No. 1-1 ¶ 37; Dkt. No. 1-2 at 35.) The Inmate Grievance Resolution Committee and the Superintendent denied the grievance. (Dkt. No. 1-1 ¶ 37.) The Central Office Review Committee ("CORC") affirmed the Superintendent's decision, noting that DOCCS "does not combine therapeutic and Cold Alternative Diet meals." (Dkt. No. 1-2 at 35.)

On June 22, 2011, Plaintiff wrote to Defendant Brian Fischer, the Commissioner of DOCCS, regarding the diet issue. (Dkt. No. 1-1 ¶ 38; Dkt. No. 1-2 at 26-34.) Defendant Fischer directed Defendant Catherine Jacobsen, the Assistant Commissioner for Programs for DOCCS, to respond to Plaintiff's letter. (Dkt. No. 1-1 ¶ 39; Dkt. No. 20-1 at 1 n.2.)

On July 27, 2011, Plaintiff wrote to Defendant Jacobsen. (Dkt. No. 1-2 at 38-44.) Plaintiff stated that "not once did I ever ask for a combined diet of kosher and non-kosher foods" and reiterated that what he wanted was "low sodium, high fiber food items from the 'kosher' menu." *Id*. at 40. Defendant Jacobsen did not respond to the letter. (Dkt. No. 1-1 ¶ 40.)

C. **Claims Regarding Censorship**

The original complaint alleged that Defendant Fischer "has allowed a biased and racial policy [and] custom of unequal due process under the law to exist all across the state concerning media review of magazines, books and newspapers." (Dkt. No. 1-1 ¶ 42.)

Under DOCCS regulations, gang signs can be "blotted out" and objectionable articles can be "cut out" of reading materials that are mailed to inmates. (Dkt. No. 1-2 at 45.) The original complaint alleged that "black owned and published as well as black culture orientated magazines and publications are the only one[]s censored by the facility media review committee . . . at Upstate and in [DOCCS] facilities state[]wide." *Id.* Specifically, Plaintiff complained that when he received a black owned and published magazine called As Is on June 13, 2011, articles about medical marijuana and ecstasy were cut out. *Id.* at 52. Yet, he alleged, similar articles in Time magazine, Newsweek magazine, and USA Today were not censored or held for media review. *Id.* Plaintiff also alleged that he received only three of five Don Diva magazines that arrived in the mail for him on July 29, 2011. *Id.* at 45-46. In those three magazines, entire pages had been removed rather than alleged gang signs being simply "blotted out." *Id.* at 46-48. This deprived Plaintiff of thirty-four pages from the magazines. *Id.* at 48.

In the original complaint Plaintiff alleged that Easy Rider magazine, which he characterized as a biker gang publication, is never censored or held for media review. (Dkt. No. 1-2 at 50.) He noted that a picture of a Ku Klux Klan rally that appeared in one of his Don Diva magazines was not censored. *Id.* at 51. He noted that neither a Time magazine issue featuring pictures of racist skinheads with automatic weapons protesting at a rally for President Obama nor another article from Time with a picture of a black man being lynched were censored. *Id.*

Plaintiff filed a grievance regarding the censorship of his magazines. (Dkt. No. 1-2 at 45-55.) He also wrote a letter to the media review committee. *Id.* at 56-58. CORC denied his appeal on November 16, 2011. *Id.* at 59. Nothing on the face of the original complaint or in the exhibits attached thereto indicated that any of the named Defendants received either the

grievance or the letter.

### D. Claims Regarding SHU Confinement

The original complaint alleged that Defendants Fischer and Venettozzi "purposefully" held Plaintiff "in punitive segregation for close to 30 days without any due process or notice, in violation of *Wolff v. McDonnell*." (Dkt. No. 1-1 ¶ 46.)

Plaintiff alleged, specifically, that he was scheduled to be released from the SHU on September 28, 2011. (Dkt. No. 1-2 at 61.) Despite that fact, he continued to be held in the SHU. *Id.* The explanation he received was that "they can hold me in SHU for 30 or even 45 days for no reason despite . . . no SHU sanctions." *Id.* On October 9, 2011, he wrote to Defendant Fischer to protest his confinement. *Id.* at 60-63. He complained, in particular, that he had missed Rosh Hashana and Yom Kippur services and expected to have to miss Sukkot because of his SHU confinement. *Id.* at 61.

## II. DEFENDANTS' MOTION TO DISMISS

Defendants moved to dismiss the original complaint. (Dkt. No. 20.) Defendants argued that Plaintiff's due process claims should be dismissed because (1) the complaint failed to allege any personal involvement by Defendants Gardner, Smith, or Venettozzi; (2) the complaint failed to state a due process claim because it failed to allege facts plausibly suggesting that Plaintiff was deprived of any liberty interest; (3) the complaint failed to state a due process claim because Plaintiff voluntarily waived his appearance at the hearing; and (4) Defendants were entitled to qualified immunity. (Dkt. No. 20-1 at 5-13.) Defendants argued that Plaintiff's religious claims regarding meals should be dismissed because (1) the Religious Land Use and Institutionalized Persons Act ("RLUIPA") does not provide for damages claims; (2) the complaint failed to allege

any personal involvement by Defendants Fischer, Jacobsen, or Haug; and (3) Defendants were entitled to qualified immunity. *Id*. at 13-19. Defendants argued that Plaintiff's Eighth Amendment claims regarding meals should be dismissed because (1) the complaint failed to allege facts plausibly suggesting that Plaintiff was served nutritionally inadequate food prepared and served under conditions presenting an immediate danger to Plaintiff's health and well-being; (2) the complaint failed to allege any personal involvement by Defendants Fischer, Jacobsen, or Haug; and (3) Defendants were entitled to qualified immunity. *Id*. at 19-21. Defendants argued that Plaintiff's claims regarding censorship should be dismissed because (1) the complaint failed to allege facts plausibly suggesting either a First Amendment or an equal protection violation; (2) the complaint failed to allege any personal involvement by Defendant Fischer; and (3) Defendant Fischer was entitled to qualified immunity. *Id*. at 21-22. Defendants argued that Plaintiff's claims regarding his SHU confinement should be dismissed because (1) the complaint failed to allege any personal involvement by Defendants Venettozzi or Fischer; (2) the complaint failed to allege facts plausibly suggesting either a due process or Eighth Amendment violation; and (3) Defendants were entitled to qualified immunity. *Id*. at 23-24. Defendants moved to dismiss Plaintiff's claims against them in their official capacities. *Id*. at 24. Finally, Defendants moved to dismiss Plaintiff's retaliation claims as overly conclusory. *Id*. at 7 n.9.

Plaintiff opposed the motion to dismiss. (Dkt. No. 23.) Plaintiff's opposition to the motion included a proposed amended complaint. (Dkt. No. 23-1.)

On September 26, 2013, the undersigned issued a Report-Recommendation granting Defendants' motion in part and denying it in part. (Dkt. No. 25.) In issuing that Report-Recommendation, the undersigned considered all of the documents in the record, including

Plaintiff's proposed amended complaint. The undersigned recommended that the Court dismiss the following claims without leave to amend: (1) all claims against Defendants in their official capacities; (2) the RLUIPA claim; and (3) the First Amendment free exercise claim. *Id.* at 34. The undersigned recommended dismissing the following claims with leave to amend: (1) the Eighth Amendment claim regarding meals; (2) the First Amendment and equal protection claims regarding reading materials; (3) the due process claim regarding SHU confinement; (4) the Eighth Amendment claim regarding SHU confinement; and (5) the retaliation claim. *Id.* The undersigned recommended that Defendants Smith, Gardner, and Venettozzi be directed to answer the due process claim regarding the combined disciplinary hearing. *Id*.

On December 21, 2013, the Court issued an order denying the motion to dismiss as moot and rejecting the Report-Recommendation in light of Plaintiff's amended complaint. (Dkt. No. 28.)

The amended complaint is now before the Court for initial review. For the reasons discussed below, I recommend that the Court dismiss the following claims without leave to amend: (1) the RLUIPA claim; and (2) the First Amendment free exercise claim; and (3) all claims against Defendants in their official capacities. I further recommend that the Court dismiss the following claims with leave to amend: (1) the Eighth Amendment claim regarding meals; (2) the First Amendment and equal protection claims regarding reading materials; (3) the due process claim regarding SHU confinement; (4) the Eighth Amendment claim regarding SHU confinement; and (5) the retaliation claim. Finally, I recommend that the Court order Defendants Smith, Gardner, and Venettozzi to answer the due process claim regarding the combined disciplinary hearing.

## III.    LEGAL STANDARD

Under 28 U.S.C. § 1915A, "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a[n] . . . employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b)(1-2) (2006). In addition, 28 U.S.C. § 1915(e) directs that when a party proceeds *in forma pauperis*, 'the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious[,] fails to state a claim on which relief may be granted[,] or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3]  Although the court has the duty to show liberality towards pro se litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a pro se action, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the court to determine that an action states a claim and that the claim is not frivolous before permitting a party to continue proceeding *in forma pauperis*. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint sua sponte if the complaint is frivolous).

---

[3] In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

## IV.    ANALYSIS

### A.    Claims Regarding Disciplinary Hearing

In the original complaint, Plaintiff claimed that Defendants Smith, Gardner, and Venettozzi violated his right to due process by holding a combined disciplinary hearing on the Malloy and O'Brien misbehavior reports without notifying Plaintiff.  (Dkt. No. 1-1 ¶ 29.) Defendants moved to dismiss this claim.  (Dkt. No. 20-1 at 5-13.)  Defendants argued that (1) the complaint failed to sufficiently allege that they were personally involved in any alleged constitutional violation; (2) the complaint failed to state a due process claim because Plaintiff was not deprived of a recognized liberty interest; (3) the complaint failed to state a due process claim because Plaintiff voluntarily waived his appearance at the hearing; and (4) they were entitled to qualified immunity.  *Id.*  I previously recommended denying the motion to dismiss Plaintiff's due process claim regarding the combined disciplinary hearing.  (Dkt. No. 25 at 10-21.)  The amended complaint repeats the allegations of the original complaint regarding this claim almost verbatim.  (Dkt. No. 30 ¶¶ 15-30.)  In addition, that amended complaint alleges that Plaintiff  was deprived of a property interest because he was fined $5.00 as part of the punishment stemming from the disciplinary hearing.  *Id.* ¶ 63.  For the reasons discussed in the earlier Report-Recommendation, I recommend that the Court find that Plaintiff's due process claims regarding the combined disciplinary hearing are sufficiently well-pleaded to survive initial review.  I further recommend that the Court direct Defendants to respond to this claim.

### B.    Claims Regarding Meals

In the original complaint, Plaintiff claimed that Defendants Haug, Fischer, and Jacobsen violated his rights by forcing him to choose between his medically prescribed diet and the diet

required by his religion. (Dkt. No. 1-1 ¶ 41.) Plaintiff asserted that this conduct violated his rights under RLUIPA, 42 U.S.C. § 1983, and the Eighth Amendment. *Id.* The Court assumed that by asserting a claim under 42 U.S.C. § 1983, Plaintiff intended to assert that Defendants violated his First Amendment right to free exercise. Defendants moved to dismiss the RLUIPA and Eighth Amendment claims. (Dkt. No. 20-1 at 13-21.) Defendants did not directly address Plaintiff's First Amendment free exercise claim, although the personal involvement and qualified immunity arguments they asserted regarding RLUIPA and the Eighth Amendment were applicable to the First Amendment claim. *Id.*

In the previous Report-Recommendation, I recommended that the Court dismiss the RLUIPA claim without leave to amend, the Eighth Amendment claim with leave to amend, and the First Amendment claim without leave to amend. (Dkt. No. 25 at 21-29.) Specifically, I found that: (1) the complaint insufficiently alleged personal involvement by Defendant Fischer (Dkt. No. 25 at 22); (2) Plaintiff could not state a claim under RLUIPA because money damages are not available and Plaintiff's transfer away from Upstate Correctional Facility mooted any possible claim for injunctive relief (Dkt. No. 25 at 24-25); (3) the complaint did not state an Eighth Amendment claim because Plaintiff did not plead facts plausibly alleging that he had been denied nutritionally adequate food (Dkt. No. 25 at 25-26); and (4) Defendants were entitled to qualified immunity regarding Plaintiff's First Amendment claim (Dkt. No. 25 at 26-29).

In the amended complaint, Plaintiff continues to assert that Defendants Haug and Jacobsen violated his Eighth Amendment, First Amendment, and RLUIPA rights by refusing to provide meals that were both medically and religiously appropriate. (Dkt. No. 30 ¶¶ 31-51.) The amended complaint no longer asserts these claims against Defendant Fischer. *Id.* ¶ 31. For the

reasons discussed below, I recommend that the Court dismiss the Eighth Amendment claim with leave to amend and the RLUIPA and First Amendment claims without leave to amend.

1. Eighth Amendment

The previous Report-Recommendation recommended dismissing Plaintiff's Eighth Amendment claim regarding food because Plaintiff had not pleaded facts plausibly suggesting that he was served nutritionally inadequate food prepared and served under conditions presenting an immediate danger to the health and well being of the inmates who consume it. (Dkt. No. 25 at 25.) The amended complaint reasserts that Defendants Haug and Jacobsen violated Plaintiff's Eighth Amendment rights. (Dkt. No. 30 ¶ 31.)

The Eighth Amendment requires "that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (punctuation omitted). "[T]he denial of kosher meals does not violate the Eighth Amendment." *Modlenaar v. Liberatore*, No. 07-CV-6012 CJS, 2009 U.S. Dist. LEXIS 62842, at *16, 2009 WL 2179661, at * 5 (W.D.N.Y. July 22, 2009).[4] "There has been no authority for the proposition that denial of a kosher meal in prison would rise to the level necessary to be deemed cruel and unusual under the Eighth Amendment." *Ward v. Goord*, No. 06-CV-1429 (DNH/DRH), 2008 U.S. Dist. LEXIS 123764, at * 17-18 (N.D.N.Y. Dec. 1, 2008) (punctuation omitted).[5] *But cf. Shakur v. Selsky*, 391 F.3d 106, 120 (2d Cir. 2004) (prisoner stated *First*

---

[4]     Defendants served a copy of this unpublished case on Plaintiff with their motion to dismiss. (Dkt. No. 20-23.)

[5]     Defendants served a copy of this unpublished case on Plaintiff with their motion to dismiss. (Dkt. No. 20-24.) This decision does not appear on Westlaw. The district court

*Amendment* claim where he alleged that he was denied one religiously significant feast).

Here, the amended complaint, like the original complaint, does not allege any facts plausibly suggesting that Plaintiff was served nutritionally inadequate food prepared and served under conditions presenting an immediate danger to the health and well being of the inmates who consume it. Plaintiff alleges that his health "has suffered severely because defendants denied him kosher low sodium, high fiber food items." (Dkt. No. 30 ¶ 50.) However, Defendants did not deny Plaintiff nutritionally adequate food because he had the option to eat the non-kosher medically prescribed diet. This option raises religious issues implicating RLUIPA and the First Amendment, which are discussed further below. Despite those religious implications, the allegations do not plausibly suggest that the meal issue posed an immediate danger to Plaintiff's health within the meaning of the Eighth Amendment. Therefore, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim.

Where a pro se complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted). Here, Plaintiff did not have the benefit of the previous Report-Recommendation when he prepared his amended complaint. It is possible, although unlikely, that he could cure the defect in his Eighth Amendment claim with

---

decision adopting the cited report-recommendation appears on Westlaw at 2009 WL 102928 (N.D.N.Y. Jan. 13, 2009).

better pleading.  Therefore, I recommend that the Court dismiss this claim with leave to amend.

2.    RLUIPA

The previous Report-Recommendation recommended dismissing Plaintiff's RLUIPA claims without leave to amend because RLUIPA does not authorize monetary damages against state officers acting in their official capacities and does not create a private right of action against state officers in their individual capacities.  (Dkt. No. 25 at 24, citing *Sossamon v. Texas*, 131 S. Ct. 1651, 1659 (2011) and *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) (per curiam).)  Pursuant to *Sossamon* and *Washington*, the only relief available for a RLUIPA claim is for injunctive relief against state officers in their official capacities.  Plaintiff did not seek injunctive relief in his original complaint.  (Dkt. No. 1-1 ¶ 41.)  In the amended complaint, however, Plaintiff does seek injunctive relief for his RLUIPA claim regarding meals.  (Dkt. No. 30 ¶¶ 43-49.)  However, as discussed in the previous Report-Recommendation, the claim for injunctive relief is moot because Plaintiff is no longer housed at Upstate Correctional Facility. *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006).  Therefore, I recommend that the Court dismiss Plaintiff's RLUIPA claims without leave to amend.

3.    First Amendment

The previous Report-Recommendation recommended dismissing Plaintiff's First Amendment claims regarding meals on the basis of qualified immunity.  (Dkt. No. 25 at 28-29.) Nothing in the amended complaint affects this recommendation.

Defendants in civil rights actions are entitled to qualified immunity from civil damages "unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781

F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). Thus, the qualified immunity inquiry in a prisoner civil rights case involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) (citations omitted), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations omitted).

In determining whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, courts in this circuit consider three factors: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992). *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

Although at least one district court has addressed DOCCS' policy of requiring inmates to choose between religious meals and medically prescribed meals (*see Hamilton*, 2009 WL 3199520), the decisional law of the Supreme Court and the Second Circuit does not currently, and did not in 2011, support the existence of the right to obtain a meal that is both medically and

religiously appropriate. Therefore, Plaintiff's First Amendment claim for damages regarding the meal issue is barred by the doctrine of qualified immunity.

Plaintiff did not seek injunctive relief for his First Amendment claim regarding meals in the original complaint. He does seek such relief in the amended complaint. (Dkt. No. 30 ¶¶ 43-49.) However, as discussed above, Plaintiff's transfer away from Upstate Correctional Facility moots his claim for injunctive relief. Therefore, I recommend that the Court dismiss Plaintiff's First Amendment claim regarding meals without leave to amend.

### C. Claims Regarding Censorship of Reading Materials

The previous Report-Recommendation recommended dismissing Plaintiff's claims against Defendant Fischer regarding censorship of reading materials because the original complaint did not adequately allege Defendant Fischer's personal involvement. (Dkt. No. 25 at 29-30.) Specifically, I noted that Plaintiff did not allege that he had ever informed Defendant Fischer of the allegedly discriminatory policy, that Defendant Fischer created the policy, or that the policy was brought to his attention in any other fashion. *Id*. at 30. The amended complaint does not cure this defect. Plaintiff once again alleges that Defendant Fischer has "allowed" the policy to exist. (Dkt. No. 30 ¶ 52.) Plaintiff alleges that "Defendant Fischer is aware of these illegal practices and is in control of the policies and customs that allow his media review censors to violate and discriminate against black oriented books and magazines." (Dkt. No. 30-1 at 30.) This allegation simply asserts respondeat superior liability, which is not available in § 1983 actions. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (per curiam); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted); *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam). In the amended

complaint, Plaintiff refers once again to a grievance and appeals he filed regarding the issue. (Dkt. No. 30-1 ¶¶ 53-54, citing Dkt. No. 1-2 at 45-59.) Those documents were discussed at length in the previous Report-Recommendation. (Dkt. No. 25 at 5-6.) As noted there, nothing in the documents indicates that any of the named Defendants received the grievances or appeals. Therefore, I recommend that the Court dismiss this claim with leave to amend.

### D.      Claims Regarding SHU Confinement

The previous Report-Recommendation recommended dismissing Plaintiff's claims against Defendant Venettozzi regarding his extended SHU confinement of "close to" thirty days for lack of personal involvement. (Dkt. No. 25 at 30.) The previous Report-Recommendation recommended dismissing the due process and Eighth Amendment claims against Defendant Fischer because Plaintiff had not alleged facts plausibly suggesting that he was subjected to any unusual SHU conditions. *Id*. at 31. In the amended complaint, Plaintiff alleges that Defendant Venettozzi was personally involved because he "was in control of all matters relating to inmates in SHU and their release dates." (Dkt. No. 30 ¶ 56.) Plaintiff further alleges that "[t]he psychological impact upon an inmate without his knowing when the confinement is going to end [] is cruel and harmful." (Dkt. No. 30-1 at 34.) Plaintiff alleges that he was not allowed to receive cortisone injections while in the SHU, which led to extreme back pain so severe that he fell out of the shower twice in one week. (Dkt. No. 30 ¶¶ 75-76.) The amended complaint also describes various ways in which SHU confinement is more restrictive than general population and administrative segregation confinement. *Id*. ¶¶ 68-80. However, none of the conditions described, other than the cortisone shot issue, are more severe than normal SHU conditions. *See Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004) (noting that "normal" SHU conditions

include being kept in solitary confinement for twenty-three hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week). The amended complaint does not distinguish between the SHU sentence that Plaintiff received as a result of the misbehavior report and the thirty days of extra SHU time that he alleges that he served as a result of Defendants' failure to release him on time. It is thus unclear when the cortisone shot issue arose or whether it plausibly created unusual SHU conditions during the extra thirty days of SHU confinement that Plaintiff ascribes to Defendants Venettozzi and Fischer. Therefore, I recommend dismissing this claim with leave to amend.

### E. Retaliation Claims

The previous Report-Recommendation recommended dismissing Plaintiff's retaliation claims with leave to amend to allege facts plausibly suggesting a causal connection between Plaintiff's protected conduct (filing grievances) and Defendants' adverse action (conducting a combined disciplinary hearing). (Dkt. No. 25 at 31-34.) The amended complaint does not cure this defect. Therefore, I recommend that the Court dismiss Plaintiff's retaliation claims with leave to amend.

### F. Official Capacity Claims

The original complaint named Defendants in their individual and official capacities. (Dkt. No. 1-1 ¶¶ 5-11.) The previous Report-Recommendation recommended dismissing Plaintiff's official-capacity claims for damages without leave to amend on Eleventh Amendment grounds. (Dkt. No. 25 at 8-9.) The previous Report-Recommendation noted that although the Eleventh Amendment would not necessarily bar claims for injunctive or declaratory relief against Defendants in their official capacities, Plaintiff's only claim for such relief was subject to

dismissal on its merits with leave to amend.  *Id*. at 9 n.5.

In the amended complaint, Plaintiff once again sues each Defendant in his or her personal and official capacities.  (Dkt. No. 30 ¶¶ 6-11.)  As explained in the earlier Report-Recommendation, claims for damages against Defendants in their official capacities are barred by the Eleventh Amendment.  In the amended complaint, Plaintiff seeks injunctive and declaratory relief from Defendants Fischer and Jacobsen regarding the food issue.  (Dkt. No. 30 ¶¶ 44-49, 57, 60.)  Plaintiff again seeks a declaration that the DOCCS media review policy is unconstitutionally discriminatory.  *Id*. ¶ 57.  Plaintiff seeks a declaration that Defendant Smith "did violate Plaintiff's rights as detailed in this Complaint."  *Id*. ¶ 62.  As explained above, these claims for injunctive relief are moot because of Plaintiff's transfer away from Upstate Correctional Facility.  Therefore, I recommend that the Court dismiss Plaintiff's claims against Defendants in their official capacities without leave to amend.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Court dismiss the following claims without leave to amend: (1) all claims against Defendants in their official capacities; (2) the RLUIPA claim; and (3) the First Amendment free exercise claim; and it is further

**RECOMMENDED** that the Court dismiss the following claims with leave to amend: (1) the Eighth Amendment claim regarding meals; (2) the First Amendment and equal protection claims regarding reading materials; (3) the due process claim regarding SHU confinement; (4) the Eighth Amendment claim regarding SHU confinement; and (5) the retaliation claim; and it is further

**RECOMMENDED** that Defendants Smith, Gardner, and Venettozzi be directed to

answer the due process claim regarding the combined disciplinary hearing.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: August 11, 2014
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge