UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD LEE CURTIS,

                        Plaintiff,

v.                                                9:12-CV-1140
                                              (NAM/TWD)

BRIAN FISCHER, LT. GARDNER,
DONALD HAUG, CATHERINE JACOBSEN,
D. VENETTOZZI, J. SMITH,

                        Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

DONALD LEE CURTIS, 86-A-3111
Plaintiff pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ERIC T. SCHNEIDERMAN               RICHARD LOMBARDO, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

# REPORT-RECOMMENDATION

      This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). In his original complaint, Plaintiff Donald Lee Curtis, an inmate of the New York Department of Corrections and Community Supervision ("DOCCS"), alleged that Defendants violated his

constitutional rights by holding a combined disciplinary hearing on two separate misbehavior reports without informing him, forcing him to choose between the kosher meal required by his religion and the meal required by his medical needs, censoring his reading materials, confining him to the Special Housing Unit ("SHU"), and retaliating against him for filing grievances. (Dkt. No. 1-1.) The matter is currently before the Court for screening of Plaintiff's second amended complaint. (Dkt. No. 39.) For the reasons that follow, I recommend that the Court dismiss without leave to amend Plaintiff's due process and Eighth Amendment claims regarding his retention in the SHU beyond the expiration of his disciplinary sentence, find that Plaintiff has abandoned certain other claims, and direct Defendants Smith, Gardner, and Venettozzi to answer the due process claims regarding the combined disciplinary hearing.

I. ALLEGATIONS OF THE ORIGINAL COMPLAINT

Unless otherwise specified, the facts in this section appear on the face of the original complaint. (Dkt. No. 1.)

A. **Combined Disciplinary Hearing**

On January 30, 2011, Plaintiff was involved in a physical altercation with another inmate. (Dkt. No. 1-1 ¶ 14.) Non-defendant Correction Officer O'Brien issued a misbehavior report charging Plaintiff with violating a direct order, violent conduct, and fighting. (Dkt. No. 1-1 ¶ 14; Dkt. No. 1-2 at 1.) As Plaintiff was being escorted to the medical unit following his altercation with the other inmate, he allegedly threatened non-defendant Correction Officer Malloy. (Dkt. No. 1-1 ¶ 15; Dkt. No. 1-2 at 2.) Officer Malloy issued a misbehavior report charging Plaintiff with verbal harassment and threats. *Id*.

On January 31, 2011, non-defendant Correction Officer North served Plaintiff with the

two misbehavior reports. (Dkt. No. 1-1 ¶ 16.) Unbeknownst to Plaintiff, Defendant Superintendent Joseph Smith had personally reviewed the reports before they were served on Plaintiff and had ordered that the reports be combined into one disciplinary hearing. *Id*. ¶ 17. Officer North did not inform Plaintiff that the reports would be examined at one combined hearing. *Id*. ¶ 18.

On February 2, 2011, Officer North came to Plaintiff's cell and informed him that it was time for the disciplinary hearing regarding the report written by Officer Malloy. (Dkt. No. 1-1 ¶ 19.) Plaintiff did not want to attend the hearing regarding that report because of previous incidents with Officer Malloy. *Id*. ¶ 20. Officer North did not inform Plaintiff that the hearing would also involve the misbehavior report issued by Officer O'Brien. *Id.* Plaintiff did want to attend the hearing on the misbehavior report issued by Officer O'Brien. *Id.* ¶¶ 24-25. Plaintiff did not attend the hearing. *Id.* ¶ 20.

At the hearing, Defendant Lieutenant Gerald Gardner, the hearing officer, "never mentioned on tape that Plaintiff had been informed verbally or in writing that the reports had been combined into one hearing." (Dkt. No. 1-1 ¶ 28.) Defendant Gardner found Plaintiff guilty of all five charges in the two misbehavior reports and sentenced him to twelve months in the SHU, twelve months' loss of good time credits, and twelve months' loss of package, commissary, phone, and event privileges. (Dkt. No. 1-2 at 3.)

On February 3, 2011, Officer North delivered the disposition documents from the hearing to Plaintiff. (Dkt. No. 1-1 ¶ 21.) This was the first time that Plaintiff became aware that the misbehavior reports issued by Officers Malloy and O'Brien had been combined into one disciplinary hearing. *Id.* ¶ 22.

A few days after the hearing, Defendant Smith came to Plaintiff's cell and informed him that he had issued the order to combine the two misbehavior reports into one hearing. (Dkt. No. 1-1 ¶ 26.)

Plaintiff appealed his disciplinary conviction, asserting that he had been denied his right to proper notice and an opportunity to be heard. (Dkt. No. 1-1 ¶ 27.) On March 28, 2011, Defendant Dominick[1] Venettozzi, the Acting Director of Special Housing and Inmate Disciplinary Programs, affirmed the disciplinary conviction but reduced the penalty from twelve months to nine months. (Dkt. No. 1-1 ¶ 27; Dkt. No. 1-2 at 16; Dkt. No. 20-1 at 1 n.2.[2])

### B.    Claims Regarding Meals

Plaintiff is a Falasha Jew and, as such, eats only kosher foods. (Dkt. No. 1-1 ¶ 32.) In April 2011, a nurse practitioner prescribed a low sodium, high fiber diet for Plaintiff. *Id.* ¶ 33. On April 19, 2011, Plaintiff wrote to non-defendant Nurse Practitioner Parmer to inform him that, because of his faith, his low sodium diet needed to be kosher. (Dkt. No. 1-2 at 17-18.) He asked for a diet prescription "removing all kosher cold cuts from my tray such as salami, bologna and turkey and substitut[ing] these meats with kosher cheese, sardines, eggs and peanut butter [and] jelly and wheat bread instead of white bread." *Id.* at 18.

Nurse Parmer responded on April 21, 2011. (Dkt. No. 1-2 at 21.) He stated that he had spoken with Defendant Donald Haug, the Food Service Administrator for Upstate Correctional

---

[1]    Plaintiff listed this Defendant as "Donald" Venettozzi in the original complaint, but later stated that his true name is Dominick Venettozzi. (Dkt. No. 30 at 4 n.1.)

[2]    References to page numbers in citations to Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

Facility. *Id*. According to Nurse Parmer, Defendant "Haug stated that you may choose either kosher diet or low cholesterol diet. There are no modifications of these diets." *Id.* (emphasis in original).

Plaintiff wrote to Defendant Haug on April 24, 2011, to explain that his religious and medical needs could be accommodated "simply by substituting all the high sodium products on my kosher tray with other kosher items already on the kosher menu." (Dkt. No. 1-2 at 23.) Defendant Haug did not respond. (Dkt. No. 1-1 ¶ 36.)

On April 27, 2011, Plaintiff filed a grievance regarding the diet issue. (Dkt. No. 1-1 ¶ 37; Dkt. No. 1-2 at 35.) The Inmate Grievance Resolution Committee and the Superintendent denied the grievance. (Dkt. No. 1-1 ¶ 37.) The Central Office Review Committee ("CORC") affirmed the Superintendent's decision, noting that DOCCS "does not combine therapeutic and Cold Alternative Diet meals." (Dkt. No. 1-2 at 35.)

On June 22, 2011, Plaintiff wrote to Defendant Brian Fischer, the Commissioner of DOCCS, regarding the diet issue. (Dkt. No. 1-1 ¶ 38; Dkt. No. 1-2 at 26-34.) Defendant Fischer directed Defendant Catherine Jacobsen, the Assistant Commissioner for Programs for DOCCS, to respond to Plaintiff's letter. (Dkt. No. 1-1 ¶ 39; Dkt. No. 20-1 at 1 n.2.)

On July 27, 2011, Plaintiff wrote to Defendant Jacobsen. (Dkt. No. 1-2 at 38-44.) Plaintiff stated that "not once did I ever ask for a combined diet of kosher and non-kosher foods" and reiterated that what he wanted was "low sodium, high fiber food items from the 'kosher' menu." *Id*. at 40. Defendant Jacobsen did not respond to the letter. (Dkt. No. 1-1 ¶ 40.)

C. **Claims Regarding Censorship**

The original complaint alleged that Defendant Fischer "has allowed a biased and racial

5

policy [and] custom of unequal due process under the law to exist all across the state concerning media review of magazines, books and newspapers." (Dkt. No. 1-1 ¶ 42.)

Under DOCCS regulations, gang signs can be "blotted out" and objectionable articles can be "cut out" of reading materials that are mailed to inmates. (Dkt. No. 1-2 at 45.) The original complaint alleged that "black owned and published as well as black culture orientated magazines and publications are the only one[]s censored by the facility media review committee . . . at Upstate and in [DOCCS] facilities state[]wide." *Id.* Specifically, Plaintiff complained that when he received a black owned and published magazine called As Is on June 13, 2011, articles about medical marijuana and ecstasy were cut out. *Id.* at 52. Yet, he alleged, similar articles in Time magazine, Newsweek magazine, and USA Today were not censored or held for media review. *Id.* Plaintiff also alleged that he received only three of five Don Diva magazines that arrived in the mail for him on July 29, 2011. *Id.* at 45-46. In those three magazines, entire pages had been removed rather than alleged gang signs being simply "blotted out." *Id.* at 46-48. This deprived Plaintiff of thirty-four pages from the magazines. *Id.* at 48.

In the original complaint Plaintiff alleged that Easy Rider magazine, which he characterized as a biker gang publication, is never censored or held for media review. (Dkt. No. 1-2 at 50.) He noted that a picture of a Ku Klux Klan rally that appeared in one of his Don Diva magazines was not censored. *Id.* at 51. He noted that neither a Time magazine issue featuring pictures of racist skinheads with automatic weapons protesting at a rally for President Obama nor another article from Time with a picture of a black man being lynched were censored. *Id.*

Plaintiff filed a grievance regarding the censorship of his magazines. (Dkt. No. 1-2 at 45-55.) He also wrote a letter to the media review committee. *Id.* at 56-58. CORC denied his

appeal on November 16, 2011. *Id.* at 59. Nothing on the face of the original complaint or in the exhibits attached thereto indicated that any of the named Defendants received either the grievance or the letter.

### D. Claims Regarding SHU Confinement

The original complaint alleged that Defendants Fischer and Venettozzi "purposefully" held Plaintiff "in punitive segregation for close to 30 days without any due process or notice, in violation of *Wolff v. McDonnell*." (Dkt. No. 1-1 ¶ 46.)

Plaintiff alleged, specifically, that he was scheduled to be released from the SHU on September 28, 2011. (Dkt. No. 1-2 at 61.) Despite that fact, he continued to be held in the SHU. *Id*. The explanation he received was that "they can hold me in SHU for 30 or even 45 days for no reason despite . . . no SHU sanctions." *Id.* On October 9, 2011, he wrote to Defendant Fischer to protest his confinement. *Id.* at 60-63. He complained, in particular, that he had missed Rosh Hashana and Yom Kippur services and expected to have to miss Sukkot because of his SHU confinement. *Id.* at 61.

## II. DEFENDANTS' MOTION TO DISMISS

Defendants moved to dismiss the original complaint. (Dkt. No. 20.) Defendants argued that Plaintiff's due process claims should be dismissed because (1) the complaint failed to allege any personal involvement by Defendants Gardner, Smith, or Venettozzi; (2) the complaint failed to state a due process claim because it failed to allege facts plausibly suggesting that Plaintiff was deprived of any liberty interest; (3) the complaint failed to state a due process claim because Plaintiff voluntarily waived his appearance at the hearing; and (4) Defendants were entitled to qualified immunity. (Dkt. No. 20-1 at 5-13.) Defendants argued that Plaintiff's religious claims

regarding meals should be dismissed because (1) the Religious Land Use and Institutionalized Persons Act ("RLUIPA") does not provide for damages claims; (2) the complaint failed to allege any personal involvement by Defendants Fischer, Jacobsen, or Haug; and (3) Defendants were entitled to qualified immunity. *Id*. at 13-19. Defendants argued that Plaintiff's Eighth Amendment claims regarding meals should be dismissed because (1) the complaint failed to allege facts plausibly suggesting that Plaintiff was served nutritionally inadequate food prepared and served under conditions presenting an immediate danger to Plaintiff's health and well-being; (2) the complaint failed to allege any personal involvement by Defendants Fischer, Jacobsen, or Haug; and (3) Defendants were entitled to qualified immunity. *Id*. at 19-21. Defendants argued that Plaintiff's claims regarding censorship should be dismissed because (1) the complaint failed to allege facts plausibly suggesting either a First Amendment or an equal protection violation; (2) the complaint failed to allege any personal involvement by Defendant Fischer; and (3) Defendant Fischer was entitled to qualified immunity. *Id*. at 21-22. Defendants argued that Plaintiff's claims regarding his SHU confinement should be dismissed because (1) the complaint failed to allege any personal involvement by Defendants Venettozzi or Fischer; (2) the complaint failed to allege facts plausibly suggesting either a due process or Eighth Amendment violation; and (3) Defendants were entitled to qualified immunity. *Id*. at 23-24. Defendants moved to dismiss Plaintiff's claims against them in their official capacities. *Id*. at 24. Finally, Defendants moved to dismiss Plaintiff's retaliation claims as overly conclusory. *Id*. at 7 n.9.

Plaintiff opposed the motion to dismiss. (Dkt. No. 23.) Plaintiff's opposition to the motion included a proposed amended complaint. (Dkt. No. 23-1.)

On September 26, 2013, the undersigned issued a Report-Recommendation granting

8

Defendants' motion in part and denying it in part. (Dkt. No. 25.) In issuing that Report-Recommendation, the undersigned considered all of the documents in the record, including Plaintiff's proposed amended complaint. The undersigned recommended that the Court dismiss the following claims without leave to amend: (1) all claims against Defendants in their official capacities; (2) the RLUIPA claim; and (3) the First Amendment free exercise claim. *Id.* at 34. The undersigned recommended dismissing the following claims with leave to amend: (1) the Eighth Amendment claim regarding meals; (2) the First Amendment and equal protection claims regarding reading materials; (3) the due process claim regarding SHU confinement; (4) the Eighth Amendment claim regarding SHU confinement; and (5) the retaliation claim. *Id*. The undersigned recommended that Defendants Smith, Gardner, and Venettozzi be directed to answer the due process claim regarding the combined disciplinary hearing. *Id*.

On December 21, 2013, the Court issued an order denying the motion to dismiss as moot and rejecting the Report-Recommendation in light of Plaintiff's amended complaint. (Dkt. No. 28.) The Court referred the amended complaint to the undersigned for initial screening.

### III. SCREENING OF THE AMENDED COMPLAINT

Upon screening of the amended complaint, I recommended that the Court: (1) find that Plaintiff's due process claims regarding the combined disciplinary hearing are sufficiently well-pleaded to survive initial review and direct Defendants to respond to the claim; (2) dismiss the Eighth Amendment claim regarding meals with leave to amend; (3) dismiss the RLUIPA and First Amendment claims regarding meals without leave to amend; (4) dismiss the claims regarding censorship with leave to amend; (5) dismiss the claims regarding SHU confinement with leave to amend; (6) dismiss the retaliation claims with leave to amend; and (7) dismiss the

9

claims against Defendants in their official capacities without leave to amend.

The Court adopted the Report-Recommendation in part and rejected it in part. (Dkt. No. 36.) In rejecting the recommendation that Plaintiff's First Amendment claims regarding meals be dismissed without leave to amend, the Court found that Defendants were not entitled to qualified immunity and thus ordered that Defendants Haug, Jacobsen, and Fischer answer the claim. *Id.* at 3, 6-7. In rejecting the recommendation that Plaintiff's RLUIPA claim for injunctive relief regarding meals be dismissed without leave to amend, the Court granted Plaintiff leave to amend the claim to name individuals at Green Haven Correctional Facility who allegedly continued to violate his religious rights regarding meal selections. *Id.* at 3, 5. The Court adopted the recommendation in all other respects.

Plaintiff filed a second amended complaint in accordance with the Court's order. (Dkt. No. 39.) That complaint is now before the undersigned for initial screening.

## IV. LEGAL STANDARD

Under 28 U.S.C. § 1915A (2006), "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a[n] . . . employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). In addition, 28 U.S.C. § 1915(e) directs that when a party proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or malicious[,] fails to state a claim on which relief may be granted[,] or . . . seeks monetary relief

against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Although the court has the duty to show liberality towards pro se litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a pro se action, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the court to determine that an action states a claim and that the claim is not frivolous before permitting a party to continue proceeding *in forma pauperis*. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint sua sponte if the complaint is frivolous).

V. SCREENING OF THE SECOND AMENDED COMPLAINT

A. RLUIPA Claims Regarding Meals at Green Haven

The only relief available for a RLUIPA claim is injunctive relief against state officers in their official capacities. *Sossamon v. Texas*, 131 S. Ct. 1651, 1659 (2011); *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) (per curiam). In the amended complaint, Plaintiff sought injunctive relief for his RLUIPA claim regarding meals. (Dkt. No. 30 ¶¶ 43-49.) I recommended dismissing that claim without leave to amend as moot because Plaintiff was no longer housed at Upstate. (Dkt. No. 32 at 15.) The Court rejected that recommendation in part, granting Plaintiff leave to amend the claim to "name as defendants the individuals, if any, who are personally involved in this alleged RLUIPA violation, to the extent it continues, at Green Haven." (Dkt. No. 36 at 2-3.)

In the second amended complaint, Plaintiff does not assert any claims regarding meals, at Green Haven or any other facility. (Dkt. No. 39.) I recommend, therefore, that the Court find that Plaintiff has decided not to pursue those claims.

### B. Eighth Amendment Claim Regarding Meals

The Court granted Plaintiff leave to amend his Eighth Amendment claims regarding his meals. (Dkt. No. 36 at 5.) In the second amended complaint, Plaintiff does not assert any claims regarding meals. (Dkt. No. 39.) I recommend, therefore, that the Court find that Plaintiff has decided not to pursue those claims.

### C. Claims Regarding Reading Materials

The Court granted Plaintiff leave to amend his First Amendment and equal protection claims regarding reading materials. (Dkt. No. 36 at 5.) In the second amended complaint, Plaintiff does not assert any claims regarding reading materials. (Dkt. No. 39.) I recommend, therefore, that the Court find that Plaintiff has decided not to pursue those claims.

### D. Claims Regarding SHU Confinement

The Court granted Plaintiff leave to amend his due process and Eighth Amendment claims regarding his SHU confinement. (Dkt. No. 36 at 5-6.) Plaintiff has amended those claims. (Dkt. No. 39.) The claims will be discussed separately.

#### 1. Due Process Claim Regarding SHU Confinement After Completion of Plaintiff's Disciplinary Sentence

Plaintiff asserts a due process claim regarding the sixteen days he was confined in the SHU after the completion of his disciplinary sentence. (Dkt. No. 39 ¶ 26.) In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a cognizable liberty or property interest without due process of law. *McKithen v. Brown*, 626 F.3d 143, 151 (2d Cir. 2010). An inmate has a liberty interest in remaining free from a confinement or restraint where the confinement or restraint imposes "an

atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000); *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

In the Second Circuit, determining whether a disciplinary confinement constituted an "atypical and significant hardship" requires examining "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Where a prisoner has served less than 101 days in disciplinary segregation, the confinement constitutes an "atypical and significant hardship" only if "the conditions were more severe than the normal SHU conditions."[3] *Id*.

In the previous complaints, Plaintiff did not allege facts plausibly suggesting that he was subjected to conditions more severe than normal SHU conditions during the extra days that he served after his disciplinary sentence was completed. (Dkt. Nos. 1 and 30.) The Court granted Plaintiff leave to amend to allege such conditions. (Dkt. No. 32 at 18-19; Dkt. No. 36 at 5.) The Court noted, in particular, that Plaintiff should "distinguish between the SHU sentence that Plaintiff received as a result of the misbehavior report and the . . . extra SHU time that he alleges that he served as a result of Defendants' failure to release him on time." (Dkt. No. 32 at 19.) In the second amended complaint, Plaintiff again alleges a variety of conditions that he endured in the SHU, including being deprived of personal property, lacking winter clothing, being confined in his cell for twenty-three hours each day, being restricted to two showers per week, being

---

[3] "Normal" SHU conditions include being kept in solitary confinement for 23 hours per day, provided one hour of exercise in the prison yard per day, and permitted two showers per week. *Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004).

restrained in handcuffs and leg irons each time he exited his cell, being denied cortisone injections, lack of sleep, constant lighting, prohibitions on attending religious services, lack of privacy during medical callouts, denial of commissary privileges, limitations on visits to one per week, denial of headphones, denial of "personal cosmetics," and lack of access to the library. (Dkt. No. 39-1 ¶ 24.) As the Court has previously noted, other than the cortisone shot issue, none of these conditions are more severe than normal SHU conditions.[4] *See Ortiz v. McBride*, 380 F.3d 649, 655 (2d Cir. 2004). Moreover, Plaintiff has, again, failed to allege facts plausibly suggesting that the cortisone shot issue arose during the extra days of SHU confinement that he attributes to Defendant Fischer, as opposed to during the longer SHU confinement attributable to Defendants Smith, Gardner, and Vennettozzi as a result of the combined disciplinary hearing. Therefore, I recommend that the Court dismiss this claim without leave to amend.

2. Eighth Amendment Claim Regarding SHU Confinement

Plaintiff alleges that the conditions of confinement he faced in the SHU violated the Eighth Amendment. (Dkt. No. 39-1 ¶¶ 20-26.) Plaintiff was granted leave to amend this claim. (Dkt. No. 36 at 5.)

The Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials "must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). To establish an Eighth

---

[4] The lack of winter clothing could, in some situations, potentially be considered a severe condition. However, the period during which Plaintiff claims that he was retained in the SHU after the expiration of his disciplinary sentence occurred in late September and early October. (Dkt. No. 1-2 at 61; Dkt. No. 30 ¶ 26.) Plaintiff has not alleged that conditions were unseasonably cold at that time.

Amendment conditions of confinement claim, a plaintiff must prove both an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, a prisoner must show that the defendant's "act or omission . . . result[ed] in the denial of the minimal civilized measure of life's necessities." *Id*. Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Plaintiff cites *United States v. Oswald*, 510 F.2d 583 (2d Cir. 1975), for the proposition that "the psychological impact upon an inmate without his knowing when the confinement is going to end is cruel and harmful." (Dkt. No. 39-1 at 14, punctuation omitted.) That case is inapplicable here. There, the Second Circuit found that a jury's award of $1000 to a prisoner who had been confined to disciplinary housing solely for possessing political materials, a punishment that contravened established Supreme Court precedent forbidding disciplinary action for the mere possession of such materials, was not excessive. The court stated that the fact that the prisoner had been confined five days after the expiration of his disciplinary sentence was just one of many factors justifying the jury's verdict. *Oswald*, 510 F.2d at 589-90. Plaintiff also cites *Wilkinson v. Skinner*, 34 N.Y.2d 53 (1974), for the proposition that "DOCCS is . . . obligated to release inmates from SHU punitive confinement on their release dates." (Dkt. No. 39-1 at 14.) Nothing in that case so holds.

The second amended complaint does not allege facts plausibly suggesting that Plaintiff was denied the minimal civilized measure of life's necessities while in the SHU. Therefore, I recommend that the Court dismiss this claim without leave to amend.

### E. Retaliation Claims

The Court granted Plaintiff leave to amend his retaliation claims. (Dkt. No. 36 at 5.) In

the second amended complaint, Plaintiff does not assert any retaliation claims. (Dkt. No. 39.) I recommend, therefore, that the Court find that Plaintiff has decided not to pursue those claims.

F.     **First Amendment Claim Regarding Meals**

The Court directed Defendants Haug, Jacobsen, and Fischer to answer Plaintiff's First Amendment claims regarding meals. (Dkt. No. 36 at 6-7.) The second amended complaint, however, does not assert any claims regarding meals. (Dkt. No. 39.) I recommend, therefore, that the Court find that Plaintiff has decided not to pursue those claims.

G.     **Due Process Claim Regarding Combined Disciplinary Hearing**

The Court directed Defendants Smith, Gardner, and Venettozzi to answer the due process claim regarding the combined disciplinary hearing. (Dkt. No. 36 at 7.) The second amended complaint, like the original and first amended complaints, states a due process claim regarding the combined disciplinary hearing. (Dkt. No. 39 ¶¶ 11-25.) Therefore, I recommend that the Court direct Defendants Smith, Gardner, and Venettozzi to answer this claim.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Court dismiss without leave to amend the due process and Eighth Amendment claims regarding Plaintiff's retention in the SHU beyond the expiration of his disciplinary sentence; and it is further

**RECOMMENDED** that the Court find that Plaintiff has abandoned his claims regarding meals, reading materials, and retaliation; and it is further

**RECOMMENDED** that Defendants Fischer, Haug, and Jacobsen be terminated from this action because all claims against them have been abandoned or dismissed without leave to amend; and it is further

**RECOMMENDED** that Defendants Smith, Gardner, and Venettozzi be directed to answer the due process claims regarding the combined disciplinary hearing.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: April 23, 2015
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge